UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

JAMES M. CROSS and DEBORAH CROSS, )
 )
  *Plaintiffs,* )
*v.* ) No.1:04-cv-108
 ) *Edgar / Carter*
CITY OF CHATTANOOGA, TENNESSEE; )
GLEN LEMLEY, JR.; NORFOLK SOUTHERN )
RAILROAD and DOES 1 THROUGH 5, )
 )
  *Defendants.* )

## MEMORANDUM

 Plaintiffs James M. Cross and Deborah Cross bring this civil rights action against the City of Chattanooga, Tennessee ("City of Chattanooga"), Officer Glen Lemley, Jr., in his individual capacity, Norfolk Southern Railroad ("Norfolk Southern"), and Does 1 through 5. Mr. Cross states claims for violation of his Fourth and Fourteenth Amendment rights under the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983"). Mr. Cross also brings claims against Officer Lemley under state law for the torts of false arrest and assault and battery. Mr. Cross asserts that, to the extent Officer Lemley's conduct was negligent, the City of Chattanooga is liable for his actions. Ms. Cross makes a claim for loss of consortium. Both Mr. and Ms. Cross assert a claim for trespass and property damage. This Court has dismissed Mr. Cross' claim against Norfolk Southern Railroad. [Court Doc. No. 19].

 Defendants City of Chattanooga and Officer Lemley move for summary judgment dismissal of all of plaintiffs' claims against them. [Court Doc. No. 27]. The City of

Chattanooga and Officer Lemley also move for dismissal of this action against Does 1 through 5. Plaintiffs oppose the motion for summary judgment. [Court Doc. No. 32].

After reviewing the record the Court finds that defendants' motion for summary judgment is well taken and will be **GRANTED**. Defendants' motion for dismissal of Does 1 through 5 will also be **GRANTED**.

## I.    Background

The facts, seen in the light most favorable to the plaintiff, are as follows. On the morning of September 15, 2003, Officer Lemley received a "disorder call" dispatching him to a vacant lot located at 1309 Bennett Avenue. [Court Doc. No. 30-1, Affidavit of Officer Glen Lemley, Jr. ("Lemley Aff."), ¶¶ 1-2]. An employee for the City of Chattanooga's Public Works Department informed Officer Lemley that his department had parked a piece of road construction equipment on a vacant lot over the weekend. The owner of the lot, Mr. Cross, had placed a piece of yellow tape across the front of the property. *Id.* Officer Lemley received information that Mr. Cross was "walking back and forth in front of the property with a gun stuck in the waist band of his pants and was telling everyone from Public Works that they could not cross the line to remove the equipment." *Id.* at ¶ 2.

When Officer Lemley arrived on the scene, he observed that Mr. Cross possessed a weapon in his waistband. Lemley Aff., ¶ 3. Mr. Cross admits he had a "Glock 40 mm" in a holster on his right hip that was "plainly visible to all concerned." [Court Doc. No 34, James M. Cross' Affidavit ("Cross Aff."), ¶ 4]. Upon seeing Mr. Cross, Officer Lemley withdrew his own weapon and asked Mr. Cross to place his hands on Officer Lemley's vehicle "for

officer safety." Lemley Aff., ¶ 3. Officer Lemley then removed Mr. Cross' gun and

handcuffed Mr. Cross behind his back. *Id.* Mr. Cross later informed Officer Lemley that he

was a railroad security employee, and Officer Lemley removed the handcuffs from behind

Mr. Cross' back and handcuffed his wrists in front of his body. *Id.* Officer Lemley then

placed Mr. Cross in his patrol car "so that he could investigate what was going on." *Id.* Mr.

Cross found the car to very hot with no fresh air circulation. Cross Aff., ¶ 5.

A Norfolk Southern Railroad police supervisor appeared at the scene and removed

Mr. Cross' gun and badge. Lemley Aff., ¶ 3. Officer Lemley spoke to Mr. Cross'

employment supervisors, and they informed Officer Lemley that it was against Norfolk

Southern's policy for Mr. Cross to carry a gun when he was not on duty and that Mr. Cross

was violating Norfolk Southern's policy by carrying his weapon at the vacant lot. *Id.*

The Department of Public Works decided not to prosecute for assault. Mr. Cross

would not agree to sign a citation in lieu of arrest, nor would he agree to appear in Court.

Lemley Aff., ¶ 3. Based on his refusal to sign a citation, Officer Lemley arrested Mr. Cross

for improper possession of a firearm. *Id.*

While at the scene Officer Lemley observed a red tail hawk wing inside Mr. Cross'

truck. Lemley Aff., ¶ 4. Officer Lemley called a Tennessee Wildlife Officer, F.M. Majors,

regarding the red tail hawk wing. *Id.* Officer Majors responded to the call and made a

decision to arrest Mr. Cross for Unlawful Possession of Animal Parts pursuant to Tenn. Code

Ann. § 70-4-202. *Id.* After remaining in the hot, patrol car for an undetermined

amount of time, Mr. Cross complained to Officer Lemley that he was having chest pains or

an "anxiety attack". Lemley Aff., ¶ 3; Cross Aff., ¶ 5. Officer Lemley called an ambulance

for Mr. Cross, and the ambulance transported Mr. Cross to the Emergency Room at

Memorial Hospital. Lemley Aff., ¶ 3, Cross Aff., ¶ 5. Mr. Cross received treatment for his

"anxiety attack" and "related physical complaints" at Memorial Hospital, and he incurred

medical bills totaling $2,129.00. Cross Aff., ¶ 5. The record does not reflect whether Mr.

Cross had health insurance at the time of the incident. While at the hospital, Officer Lemley

again asked Mr. Cross if he would sign a citation in lieu of arrest. Lemley Aff., ¶ 5. Mr.

Cross refused to sign the citation or discuss the issue with Officer Lemley. *Id.* Officer

Lemley also attempted to speak to Ms. Cross, but she refused to speak to him as well. *Id.*

After Memorial Hospital released Mr. Cross, Officer Lemley transported him to the Hamilton

County Jail. *Id.*

Mr. Cross asserts that Officer Lemley "physically assaulted" him. Cross Aff., ¶ 5.

Officer Lemley admits he used some degree of force to facilitate taking Mr. Cross into

custody and into his patrol car after Officer Lemley observed Mr. Cross to have a weapon at

the scene. Lemley Aff., ¶ 4. Officer Lemley never struck or beat Mr. Cross at any time, and

he changed the position of his handcuffs and called an ambulance to assist Mr. Cross. *Id.*

Officer Lemley did not observe any injuries to Mr. Cross resulting from his arrest. *Id.*

Mr. Cross remained in jail between four and five hours until he was released. Cross

Aff., ¶ 6. The Hamilton County General Sessions Court eventually dismissed the case

against Mr. Cross after Mr. Cross paid the costs of his arrest. Lemley Aff., ¶ 6.

-4-

Officer Lemley completed the Chattanooga Police Department's twenty week training academy in 1991. Lemley Aff., ¶ 6; [Court Doc. No. 29, Affidavit of Captain Mark Rawlston ("Rawlston Aff."), ¶ 3]. Officer Lemley has also participated in forty hours of annual in-service training since 1991. Lemley Aff., ¶ 6; Rawlston Aff., ¶ 3. The Chattanooga Police Department never disciplined Officer Lemley prior to September 15, 2003. Lemley Aff., ¶ 8; Rawlston Aff., ¶ 5. The department has not found any well-grounded or sustained allegations of excessive force against Officer Lemley. Lemley Aff., ¶ 8; Rawlston Aff., ¶ 5; [Court Doc. No. 27-2, Affidavit of Lon Eilders ("Eilders Aff."), ¶ 6].

The record reveals that during the relevant time period, the City of Chattanooga did not have a policy, custom, or practice of allowing its officers to arrest individuals without probable cause or to allow its officers to use excessive or unwarranted force when taking individuals into custody. Eilders Aff., ¶¶ 2-3. The City of Chattanooga did not have a policy or custom of employing police officers who do not have proper training or supervision. *Id.* at ¶ 4. The City of Chattanooga provides training in excess of the state of Tennessee's qualification and certification requirements for police training. *Id.*

The Chattanooga Police Department's policy on Arrest Procedures states, in part, "[i]t is the policy of the Chattanooga Police Department to make all arrests in compliance with the provisions of the Constitution and laws of the United States and the Constitution and laws of the State of Tennessee." Eilders Aff., Ex. A. The policy further states that "[a]rresting officers should take into consideration the use of sufficient manpower to avoid any unnecessary use of force or violence." *Id. See also* Eilders Aff., Ex. B. It further makes clear

that "[t]he basic rule is that in all cases use only that amount of force that is reasonably necessary to effect an arrest.  It is against the law and a violation of department policy to use more force than is reasonably necessary to effect an arrest."  *Id.*  The policy provides that "[a]ny arrest without a warrant must be based upon probable cause."  *Id.*

## II.  Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435.  The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof.  *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine

the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also*

*Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court

concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party

based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at

251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir.

1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

## III.    Analysis

### A.    *Section 1983 Claim*

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim pursuant to Section 1983, plaintiffs must demonstrate

two elements: "(1) the defendants deprived [plaintiffs] of a right, privilege, or immunity

secured to [them] by the United States Constitution or other federal law; and (2) the

defendants caused the deprivation while acting under color of state law." *Cunningham v.*

*Sisk*, 2003 WL 23471531, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220

-8-

F.3d 433, 441 (6th Cir. 2000)).  Only the first prong of the test is relevant in this action

because the defendants do not dispute that Officer Lemley was acting under color of state law

in arresting Mr. Cross.

Section 1983 " 'creates no substantive rights; it merely provides remedies for

deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820,

830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)).

Plaintiffs allege that the defendants violated Mr. Cross' Fourth and Fourteenth Amendment

rights under the U.S. Constitution.  U.S. Const. amend. IV; U.S. Const. amend. XIV.

### 1.    City of Chattanooga

The U.S. Supreme Court has held that municipalities are included as persons within

the meaning of Section 1983, and therefore plaintiffs may sue municipalities for relief under

the statute.  *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56

L.Ed.2d 611 (1978).  However, a municipality may not be held liable under Section 1983

under a theory of respondeat superior.  *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th

Cir. 2005) (citing  *Monell*, 436 U.S. at 691).  Municipalities are only liable under Section

1983 if they have an established policy or custom that causes the alleged injury.  *See Monell*,

436 U.S. at 690.

> A municipality may be held liable only 'when execution of a
> government's policy or custom, whether made by its lawmakers or by
> those whose edicts or acts may fairly be said to represent official
> policy, inflicts the injury.'  Furthermore, for municipal liability, there
> must be an 'affirmative link between the policy and the particular
> constitutional violation alleged.'  The claimant has the burden of proof
> for establishing the existence of an unconstitutional policy and

> demonstrating the link between the policy and the alleged injuries at
> issue.

*Bennett*, 410 F.3d at 818-19 (quotations and citations omitted). Plaintiffs must prove that

their particular injuries were "incurred because of the execution of the policy or custom."

*Cunningham*, 2003 WL 23471541 at *14 (citing *Board of County Comm'rs of Bryan County

v. Brown*, 520 U.S. 397, 405 (1997); *Gregory*, 220 F.3d at 442; *Doe v. Claiborne County,

Tennessee*, 103 F.3d 495 (6th Cir. 1996); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364

(6th Cir. 1993)).

    This Court has noted that a custom must " 'be so permanent and well settled as to

constitute a custom or usage with the force of law.' " *Cunningham*, 2003 WL 23471541 at

*14 (quoting *Monell*, 436 U.S. at 691). Plaintiffs may establish a policy or custom in several

ways. There may be an official policy that defendants promulgated. *Id.* Plaintiffs may also

show a "pervasive custom or practice of which the [ ] lawmakers either know or reasonably

should know." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85

L.Ed.2d 791 (1985)). Such a custom must be "so widespread and commonly accepted as to

in effect have the force of law." *Cunningham*, 2003 WL 23471541 at *14 (citing *Brown*, 520

U.S. at 404; *Monell*, 436 U.S. at 690-91). Plaintiffs can also establish the requisite policy or

custom for purposes of Section 1983 by demonstrating that an official with policymaking

authority has taken a single act relating to the subject matter or area at issue. *Cunningham*,

2003 WL 23471541 at *14 (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127, 108

S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembauer v. City of Cinncinnati*, 475 U.S. 469, 480-81,

106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Plaintiffs present no evidence of any policy or custom, either official or unofficial, on the part of the City of Chattanooga relating to the alleged violation of Mr. Cross' constitutional rights. The City of Chattanooga presents evidence that it has no policies in place encouraging such violations and that it has policies in effect to prevent violations of constitutional rights. [Court Doc. No. 27-2, Eilders Aff., ¶¶ 2-3, Ex. A]. It is plaintiffs' burden to produce evidence of a policy, an injury, and a link between the policy and the injury. *See Bennett*, 410 F.3d at 818-19. Plaintiffs fail to establish evidence of the requisite policy.

Plaintiffs could also demonstrate liability under Section 1983 against the City of Chattanooga by showing that the city failed properly to train and supervise its employees. *Cunningham*, 2003 WL 23471541 at *15. Liability under this theory will exist only if plaintiffs "can prove that the [governmental agencies'] failure to train evidences deliberate indifference to the rights of its inhabitants such that the failure to train in effect constitutes a governmental custom or policy within the *Monell* framework." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

In the instant action the City of Chattanooga presents evidence that it requires its police officers to undergo extensive training regarding arrests and use of excessive force. Lemley Aff., ¶¶ 6-7; Rawlston Aff., ¶¶ 3-4. The City of Chattanooga also presents evidence that it has a policy for receiving and investigating citizen complaints regarding excessive force and unlawful arrest. Attachment to Rawlston Aff. Plaintiffs demonstrate no evidence of a failure to train or supervise by the City of Chattanooga. Because plaintiffs fail to

introduce evidence creating a genuine issue of material fact regarding an unlawful policy or a failure to train by defendant City of Chattanooga, this Court will **DISMISS** plaintiffs' Section 1983 claims against the City of Chattanooga.

## 2.    Officer Lemley

Officer Lemley argues that the doctrine of qualified immunity applies and shields him from liability for any alleged constitutional violations in this case.  The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  The U.S. Supreme Court has established a two-part test for determining whether a law enforcement officer is entitled to qualified immunity.  *See Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005) (citing *Brosseau v. Haugen*, __ U.S. __, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)).  Under this test district courts must:

> consider whether 'the facts alleged show the officer's conduct violated
> a constitutional right.' . . . If the plaintiff can establish that a
> constitutional violation occurred, a court should ask 'whether the right
> was clearly established . . . in light of the specific context of the case,
> not as a broad general proposition.

*Lyons*, 417 F.3d at 571 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Once the defendants claim the affirmative defense of qualified immunity, the burden shifts to the plaintiffs to demonstrate that the defendants are not entitled to the defense of

-12-

qualified immunity. *Myers v. Potter*, __ F.3d __, 2005 WL 2138543, *4 (6th Cir. 2005)

(citing *Gardenhire*, 205 F.3d at 311). When a defendant moves for summary judgment and

asserts the defense of qualified immunity, the plaintiffs must "1) identify a clearly established

right alleged to have been violated; and 2) establish that a reasonable officer in the

defendant's position should have known that the conduct at issue was undertaken in violation

of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (citing *Johnson v.*

*Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991)).

Law enforcement officials will be entitled to qualified immunity " 'when their

decision was *reasonable,* even if mistaken.' " *Pray*, 49 F.3d at 1158 (quoting *Castro v.*

*United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Further, " '[if] officers of reasonable

competence could disagree on this issue, immunity should be recognized.' " *Pray*, 49 F.3d at

1158 (quoting *Malley v. Briggs*, 475 U.S. 335, 349, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271

(1986)).

The threshold issue to analyze is whether defendants violated a constitutional right.

*Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994). Plaintiffs allege in

their complaint that Officer Lemley's arrest of Mr. Cross violated his Fourth and Fourteenth

Amendment rights. The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers
> and effects, against unreasonable searches and seizures, shall not be
> violated, and no Warrants shall issue, but upon probable cause,
> supported by Oath or affirmation, and particularly describing the place
> to be searched, and the persons or things to be seized.

-13-

U.S. Const. amend. IV. The Fourteenth Amendment makes the Fourth Amendment applicable to the states. U.S. Const. amend. XIV; *see Michigan v. Summers*, 452 U.S. 692, 694 n.2, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Where plaintiffs' claims under the Fourteenth Amendment arise out of a common nucleus of facts and pertain to an alleged wrongful seizure, it is appropriate to analyze such claims under the reasonableness standard of the Fourth Amendment instead of an analysis of substantive due process rights. *See e.g. Alexander v. Beale Street Blues Co.*, 108 F.Supp.2d 934, 940 (W.D. Tenn. 1999); *see also, Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *U.S. v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Thus, the Court analyzes whether Officer Lemley unreasonably seized Mr. Cross in violation of his Fourth Amendment rights.

The Fourth Amendment requires that an arrest be made upon probable cause. *Lyons*, 417 F.3d at 573. Whether probable cause for arrest exists depends on: "whether the 'facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). Courts must assess this question by considering the perspective of the reasonable officer facing the situation rather than with the benefit of hindsight. *Lyons*, 417 F.3d at 573.

In the instant action Officer Lemley received a call from an employee of the City of Chattanooga's Department of Public Works Department informing him that the department

had parked a piece of road construction equipment on a vacant lot. Lemley Aff., ¶ 2. Officer

Lemley learned that Mr. Cross "was walking back and forth in front of the property with a

gun stuck in the waist band of his pants and was telling everyone from Public Works that

they could not cross the line to remove the equipment." *Id.* Officer Lemley arrived at the

scene and observed Mr. Cross with a gun visible in his waist band. Mr. Cross does not

dispute that he had his gun visible at his waist. Cross Aff., ¶ 4. Based on this information,

Officer Lemley withdrew his weapon, disarmed Mr. Cross, handcuffed him, and placed him

in the police vehicle so that he could investigate the situation further. Lemley Aff., ¶ 3.

Officer Lemley spoke with Mr. Cross' supervisor at Norfolk Southern, who informed Officer

Lemley that Mr. Cross was violating Norfolk Southern's policy by carrying his gun while not

on duty. *Id.* Officer Lemley then arrested Mr. Cross for "improper possession of a firearm".

*Id.* at ¶ 3. A Tennessee Wildlife Officer also made the decision to arrest Mr. Cross after

Officer Lemley observed the wing of a red tail hawk in Mr. Cross' truck. *Id.* at ¶ 4.

Tennessee law provides that "[a] person commits an offense who carries with the

intent to go armed a firearm." Tenn. Code Ann. § 39-17-1307(a)(1). Tennessee law provides

that a person may carry a loaded handgun on his person pursuant to a valid permit in the

person's possession while carrying the handgun. Tenn. Code Ann. § 39-17-1351(n); *United

States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003). Mr. Cross' affidavit does not state that he

informed Officer Lemley that he had a valid gun permit in his possession. Nor do plaintiffs

assert that Officer Lemley would have reason to know upon his initial arrival on the scene

that Mr. Cross possessed his gun pursuant to a valid permit or any other applicable statutory provision.

Further, Tennessee law states that assault occurs when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). Tennessee law also prohibits the taking and possession of certain wild animal parts. *See* Tenn. Code Ann. §§ 70-4-202, 70-4-102. Based on Mr. Cross' conduct at the time of his arrest, the weapon visible at his waist, the red tail hawk wing in his truck, and the relevant Tennessee criminal statutes, the Court finds that Officer Lemley had probable cause to arrest Mr. Cross.

Plaintiffs present the "expert" affidavit of Steve Garrison in support of their argument that Officer Lemley lacked probable cause to arrest Mr. Cross. [Court Doc. No. 34]. Because Mr. Garrison's affidavit is based on a "review" of Mr. Cross' file and conversations with Mr. Cross, instead of personal knowledge, the Court will not consider his testimony. *See* Fed. R. Civ. P. 56(e). Based on the record before it, the Court concludes that plaintiffs fail to demonstrate that Officer Lemley engaged in conduct which violated Mr. Cross' Fourth Amendment right to be free from unreasonable seizures.

Plaintiffs also assert that Officer Lemley used excessive force against Mr. Cross. The Fourth Amendment protects individuals from the use of excessive force pursuant to an arrest. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865). "In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances,

-16-

were objectively reasonable." *Kostrzewa*, 247 F.3d at 639. The Sixth Circuit has determined that courts must consider the perspective of a reasonable officer on the scene rather than with the benefit of 20/20 hindsight. *Id.* The Sixth Circuit has held that whether the Court should grant qualified immunity in an excessive force case turns on whether the police officer used excessive force. *Kostrzewa*, 247 F.3d at 642.

In the instant action, plaintiffs provide no affirmative evidence that Officer Lemley's actions in handcuffing Mr. Cross and placing him temporarily in the patrol car were excessive under the circumstances. Plaintiffs do not allege that Officer Lemley struck or beat Mr. Cross or that Officer Lemley handcuffed Mr. Cross too tightly. Although the complaint alleges that Officer Lemley treated Mr. Cross roughly, the complaint is unverified. [Court Doc. No. 1]. To withstand a motion for summary judgment, plaintiffs may not rely solely upon allegations in their complaint. Fed. R. Civ. P. 56(e); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Plaintiffs do not dispute Officer Lemley's evidence indicating that he did not physically harm Mr. Cross and that he changed the position of the handcuffs on Mr. Cross when he complained. Mr. Cross asserts that Officer Lemley "physically assaulted" him and that he suffered from an anxiety attack while sitting in Officer Lemley's patrol car. Cross Aff., ¶ 5. However, plaintiffs demonstrate no evidence linking Officer Lemley's use of force against Mr. Cross to his anxiety attack. Mr. Cross asserts that the car was very hot. *Id.* The record reveals that the incident occurred on September 15, 2003 at around 8:30 a.m. [Court Doc. No. 30-2]. The record does not reveal the outside temperature during the relevant time

-17-

period, nor does the record reveal the nature or scope of the anxiety attack or any records

provided by Memorial Hospital related to the incident. Plaintiffs fail to demonstrate a

genuine issue of material fact regarding whether Officer Lemley used excessive force against

Mr. Cross or whether his use of force was unreasonable under the circumstances. Because

plaintiffs fail to demonstrate that a constitutional violation of any kind occurred, Officer

Lemley is entitled to qualified immunity based on his alleged actions. This Court will

**DISMISS** plaintiffs' Section 1983 claims against Officer Lemley.

### B. *State Law Claims*

Plaintiffs assert state law claims for false arrest and assault and battery against the

City of Chattanooga and Officer Lemley. Plaintiffs also assert a state law claim of trespass

against the City of Chattanooga. Under the Tennessee Governmental Tort Liability Act,

Tenn. Code Ann. §§ 29-20-101 et seq. ("TGTLA"), Tennessee state courts retain exclusive

jurisdiction over claims arising under the TGTLA. Tennessee Code Annotated § 29-20-307

provides that "[t]he circuit courts shall have exclusive original jurisdiction over any action

brought under this chapter and shall hear and decide such suits without the intervention of a

jury." The TGTLA requires that all claims must be brought in "strict compliance" with the

Act. Tenn. Code Ann. § 29-20-201(c). The Act provides that "[e]xcept as may be otherwise

provided in this chapter, all governmental entities shall be immune from suit for any injury

which may result from the activities of such governmental entities wherein such

governmental entities are engaged in the exercise and discharge of any of their functions,

governmental or proprietary." Tenn. Code Ann. § 29-20-201(a).

-18-

In *Beddingfield v. City of Pulaski, Tennessee* the district court declined to exercise jurisdiction over pendent state law claims of wrongful death and violation of the Tennessee Constitution "in the face of the limitations upon suability specified in Tenn. Code Ann. § 39-20-307." 666 F.Supp. 1064, 1066 (M.D. Tenn.), *rev'd on other grounds*, 861 F.2d 968 (6th Cir. 1988). 28 U.S.C. § 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . . if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Sixth Circuit has determined that "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." *Gregory*, 220 F.3d at 446; *see also Maxwell v. Conn*, 893 F.2d 1335, 1990 WL 2774 *3-4 (6th Cir. 1990); *Millender v. Bowman*, 2004 WL 2238526 *3 (W.D. Tenn. 2004); *Spurlock v. Whitney*, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997); *Timberlake v. Benton*, 786 F.Supp. 676, 696 (1992). Because the TGTLA provides that exclusive jurisdiction for claims arising under the Act rest with Tennessee state courts, this Court will **DISMISS WITHOUT PREJUDICE** the plaintiffs' state law claims against the City of Chattanooga.

Plaintiffs also bring state law claims for false arrest and assault and battery against Officer Lemley individually. As the district court noted in *Timberlake*, the TGTLA "addresses the liability of governmental entities only. Its jurisdictional limitations do not apply to persons sued individually." 786 F.Supp. 676, 697 (M.D. Tenn. 1992). This Court

-19-

has discretion to decline jurisdiction over state law claims even where jurisdiction is proper. *See* 28 U.S.C. § 1367(c)(3); *Jenkins v. Horton*, 2005 WL 1239283 *2 (W.D. Tenn. 2005). The Sixth Circuit "has expressed a strong policy in favor of dismissing" state law claims when all of the federal claims over which the district court had original jurisdiction have been dismissed. *Staggs v. Ausdenmoore*, 992 F.2d 1217, 1993 WL 131942 *5 (6th Cir. 1993) (citing *Service, Hosp. Nursing Home and Public Employees Union v. Commercial Prop. Servs., Inc.*, 755 F.2d 499, 506 n. 9 (6th Cir.), *cert. denied*, 474 U.S. 850 (1985)).

Because this Court has dismissed all federal claims against Officer Lemley, this Court declines to exercise jurisdiction over the state law claims against Officer Lemley that are not governed by the TGTLA. Therefore, these claims will be **DISMISSED WITHOUT PREJUDICE**.

### C. *Loss of Consortium Claim*

Ms. Cross states a claim for loss of consortium. [Court Doc. No. 1]. The complaint alleges loss of consortium due to the wrongful termination by Norfolk Southern. *See id.* The Court has dismissed Norfolk Southern from this case; therefore, the Court will address Ms. Cross' loss of consortium claim solely as it pertains to the claims brought against the City of Chattanooga and Officer Lemley. [Court Doc. No. 19].

In *Jenkins v. Carruth* this Court stated:

> The plaintiffs have not cited, nor has the Court found, any authority permitting a husband to recover for damages under 42 U.S.C. § 1983 for the deprivation by a third party of the civil rights of his wife. The law seems clear that one person may not sue, nor recover damages, for the deprivation of another person's civil rights.

-20-

583 F.Supp. 613, 616 (E.D. Tenn. 1982) (citations omitted). In *Jenkins* this Court dismissed a husband's claim of loss of consortium based on the alleged denial of the wife's civil rights under Section 1983. *Id. See also Niehus v. Liberio*, 973 F.2d 526, 533-34 (7th Cir. 1992); *Tauriac v. Polaroid Corp.*, 716 F.Supp. 672, 673 (D. Mass. 1989). Based on this authority, the Court concludes that Ms. Cross cannot state a claim for loss of consortium due to any alleged violation of Mr. Cross' civil rights under Section 1983.

Tennessee law provides that "[t]here shall exist in cases where such damages are proved by a spouse, a right to recover for loss of consortium." Tenn. Code Ann. § 25-1-106. Tennessee courts have determined that a claim of loss of consortium is a claim that is a derivative of the spouse's claims and that "the injuries to his or her spouse are an element and must be proved." *Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178 (Tenn. Ct. App. 1987). Because this Court has dismissed Mr. Cross' actions under state law for false arrest and assault and battery for lack of jurisdiction, this Court will also **DISMISS** Ms. Cross' state law claim for loss of consortium.

### D.  *Motion to Dismiss Defendants Does 1 Through 5*

The events giving rise to this action occurred on September 15, 2003. Plaintiffs filed their complaint on April 15, 2004 against the City of Chattanooga, Norfolk Southern, Officer Lemley, and Does 1 through 5. The City of Chattanooga and Officer Lemley move to dismiss defendants Does 1 through 5 based on statute of limitations grounds and a failure to comply with service requirements under Federal Rules of Civil Procedure 4(m) and 15(c). Plaintiffs do not respond to the City of Chattanooga's and Officer Lemley's arguments

pertaining to dismissal of the Doe defendants, nor do they assert any good cause for having failed to serve such defendants.       Tenn. Code Ann. § 28-3-105 provides a one-year statute of limitations for actions arising under federal civil rights statutes and actions for "injuries to the person."  Tenn. Code Ann. § 28-3-104(a)(1)-(3); *see also Berndt v. State of Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986); *King v. Emery*, 871 F.2d 1088, 1989 WL 27992 *1 (6th Cir. 1989).

Federal Rule of Civil Procedure 4(m) provides:

> If services of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Federal Rule of Civil Procedure 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
> (1) relation back is permitted by the law that provides the statute of limitation applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by Amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against a party.

Fed. R. Civ. P. 15(c).

Federal courts have discussed a plaintiff's obligation to identify and serve John Doe defendants within the context of Federal Rules of Civil Procedure 4(m) and 15(c). The Sixth Circuit has held that:

> new parties may not be added after the statute of limitations has run, and [ ] such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B). . . . The naming of 'unknown police officers' in the original complaint does not save the pleading. Substituting a named defendant for a 'John Doe' defendant is considered a change of parties. Therefore, the requirements of Fed. R. Civ. P. 15(c) must be met in order for the amendment adding the named defendant to relate back to the filing of the original complaint.

*Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449-50 (6th Cir. 1991); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973)).

In *Dye v. City of Warren*, the district court addressed a situation in which the plaintiff had failed to amend his complaint to identify five John Doe defendants within the relevant statute of limitations for Section 1983 actions in Ohio. 367 F.Supp.2d 1175, 1182 (N.D. Ohio 2005). The court in *Dye* noted that the John Doe defendants had received neither actual nor constructive notice of the lawsuit as required under Federal Rule of Civil Procedure 15(c)(3). *Id.* Whether constructive notice has occurred depends on such facts as "the relationship between the unnamed parties and the named defendants and whether the old and new parties share representation." *Id.* at 1182 n. 4 (citing *Berndt*, 796 F.2d 879). In *Dye* the court found that the John Doe defendants had no constructive notice of the lawsuit where they were "rank and file officers" and not "high officials" who would have been involved in the city's legal disputes and where plaintiff had pursued no discovery seeking to identify the

-23-

John Doe defendants for three years after the date of the incident. *Dye*, 367 F.Supp.2d at

1182 n.4. The district court held that the plaintiff's proposed amendment to change the John

Doe defendants to identified officers did not relate back to the original complaint. *Id.* at

1184.

Federal Rule of Civil Procedure 15(c)(3) also incorporates the requirements of Federal

Rule of Civil Procedure 4(m). As the Sixth Circuit has noted:

> Rule 4 requires a plaintiff to perfect service on a defendant within 120
> days of filing a complaint naming that defendant. A plaintiff cannot
> extend the service period with respect to an already-named defendant
> by filing an amended complaint naming additional defendants. In the
> absence of a showing of good cause, failure to timely serve a defendant
> mandates dismissal. The plaintiff bears the burden of showing good
> cause for failure to timely serve.

*Harris v. City of Cleveland*, 7 Fed. Appx. 452, 456 (6th Cir. 2001) (citations omitted). *See*

*also Doughty v. City of Vermillion*, 118 F.Supp.2d 819, 821 n.1 (N.D. Ohio 1999).

In the instant action more than two years have lapsed since Mr. Cross' arrest and the

events giving rise to this lawsuit. Plaintiffs filed their complaint within the one-year statute

of limitations for federal civil rights actions and personal injury actions. Tenn. Code Ann. §

28-3-104. The complaint names Does 1 through 5 as defendants. [Court Doc. No. 1].

However, it is unclear from reading the complaint what unlawful actions any Doe defendants

took against plaintiffs. *Id.* The complaint vaguely asserts that one other police officer

rummaged through Mr. Cross' briefcase and found identification indicating that Mr. Cross

was a police officer. *Id.* at ¶ 11. However, no other Doe defendants are mentioned in the

complaint, and it is further unclear whether any of the Doe defendants' actions relate to Norfolk Southern's allegedly wrongful termination.

The City of Chattanooga and Officer Lemley assert that plaintiffs have sought no discovery to reveal the identity of any Doe defendants. [Court Doc. No. 28-1, pp. 21-22]. Plaintiffs have not moved to amend their complaint to identify the Doe defendants. Nor do plaintiffs allege that they served any Doe defendants with service of process within 120 days of their filing of the complaint. It also does not appear that the Doe defendants have actual or constructive notice of this lawsuit since it is not even apparent what they are alleged to have done. Plaintiffs fail to assert that the Doe defendants are high-ranking city officials who would be on constructive notice of all lawsuits filed against the City of Chattanooga. Further, the plaintiffs demonstrate no good cause for their failure to seek the identity of the Doe defendants. Because plaintiffs have failed to move to amend their complaint in accordance with Federal Rule of Civil Procedure 15(c) and have failed to serve the Doe defendants in accordance with Federal Rule of Civil Procedure 4(m), the Court will **DISMISS** the Doe defendants from this action.

## IV. Conclusion

After reviewing the record and the applicable law, the Court concludes that no genuine issue of material fact exists regarding plaintiffs' claims against the City of Chattanooga and Officer Lemley brought pursuant to 42 U.S.C. § 1983, and these claims will be **DISMISSED WITH PREJUDICE**. Plaintiffs' state law claims against the City of Chattanooga and Officer Lemley will be **DISMISSED WITHOUT PREJUDICE** based on

-25-

lack of jurisdiction. Plaintiffs' claims against Does 1 through 5 will be **DISMISSED**

**WITHOUT PREJUDICE**. Defendants' motion for summary judgment will be

**GRANTED**.

A separate judgment will enter.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE